IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KATIE DIEHM,

                Plaintiff,          OPINION AND ORDER

v.

                                            18-cv-830-wmc

MESSERLI & KRAMER, P.A.,

                Defendant.

This is a follow-on lawsuit to a series of cases claiming that that defendant Messerli & Kramer, P.A. ("Messerli"), a national collection law firm, failed to comply with the requirements for a notice to cure and the meaningful involvement by an attorney under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(3).[1] Plaintiff Katie Diehm similarly claims Messerli falsely represented or implied that one of its attorneys was meaningfully involved in filing a state court collections action against her. Before the court is defendant's motion for summary judgment, which points out the uniquely narrow injury that plaintiff is claiming here and raises legitimate issues as to her standing, as well as her ability to prove liability and actual damages. (Dkt. #14.) However, because of evidence of the mill-like pleading review then in place at Messerli, as well as plaintiff's somewhat dubious assertion that she would have acted differently if she knew the Messerli attorney who signed the complaint had not meaningfully reviewed and verified it, plaintiff has standing to pursue this claim under United States Supreme Court and Seventh Circuit case law. Moreover, a reasonable jury might find that the attorney verified the complaint

---

[1] *See, e.g., Bahena v. Jefferson Cap. Sys., LLC*, No. 17-cv-461-jdp (W.D. Wis. June 14, 2017); *Satran v. LVNV Funding*, No. 17-cv-896-jdp (W.D. Wis. Nov. 17, 2017); *LoMastro v. Baxter Credit Union*, No. 17-cv-962-wmc (W.D. Wis. Dec. 29, 2017).

without meaningful involvement and that the alleged misrepresentation was material. As such, the court must deny defendant's motion for summary judgment.

UNDISPUTED FACTS[2]

A. **Overview of the Parties**

Unable to afford payments, Katie Diehm defaulted on her consumer credit card account. Diehm knew she had a credit account with an outstanding balance owing, although a third-party, LVNV Funding, LLC, had acquired rights to Diehm's defaulted account after the original creditor had closed and charged-off its account. In turn, LVNV retained defendant Messerli to collect on Diehm's delinquent account.

Messerli has had a relationship with LVNV for over 10 years and was already familiar with the kind of account information and documentation that LVNV provided with respect to Diehm's account. With regard to filing collection actions in Wisconsin, Messerli's general practice is to use a template for summons and complaint based on Wisconsin Court Form SC-500, which specified attorneys licensed to practice in Wisconsin then review and approve. Messerli also holds weekly meetings with its state-level attorneys and non-attorney staff to discuss changes in the state law and pending cases, as well as other court, staffing and/or document and form related concerns.

---

[2] Unless otherwise noted, the court finds the following facts undisputed and material for purposes of summary judgment, viewed in the light most favorable to plaintiff as the non-moving party. In particular, defendant did not file responses to plaintiff's proposed findings of facts, so the court has deemed those undisputed. The court has, however, generally not included proposed findings of facts that are simply attorney argument about what should be inferred from underlying evidence; instead, the court largely addresses what are and are not reasonable, material inferences in the opinion below.

2

### B. Messerli's Handling of Diehm's Account

With respect to Diehm's defaulted credit card account in particular, LNVN supplied Messerli with: (1) a bill of sale title chain; (2) a listing showing Diehm's address and "consumer level information"; (3) a sample 2017 terms and conditions of a Credit One Bank credit card; and (4) a set of 8 billing statements. At least some of this information was transferred electronically via Messerli's Cogent computer system. Plaintiff points out that these documents contained inaccuracies, including that LVNV listed a "LPAYDT" of 1/1/1980, which the parties agree stands for "last pay date." Given that the account was only active in 2016 and 2017, that date is plainly inaccurate, although there is no evidence that this error would have made any material difference in Messerli's meaningful review of Diehm's account, much less the accuracy of the specific allegations in the state law complaint ultimately filed them. In addition, the terms and conditions submitted to Messerli by LVNV were dated 2017, even though Diehm's account originated in 2016, if not earlier. However, again, plaintiff has offered no evidence that this error would have materially changed Messerli's review and filing of her verified collection complaint, nor offered any other examples of errors that may have been material.

On or about June 26, 2017, on behalf of LVNV, Messerli sent a letter to Diehm regarding her defaulted account. Diehm failed to respond to this letter, which allowed Messerli to presume that the debt was valid and further allowed Messerli to proceed with litigation under the FDCPA.

On October 8, 2017, a legal assistant with Messerli reviewed Diehm's account records for filing of a lawsuit. Based on her review, the legal assistant determined that the

3

file was ready for a Summons and Complaint to be prepared. More specifically, as a matter of practice, Messerli personnel verify that: (1) the claims are within the statute of limitations; (2) there are no ongoing bankruptcy proceedings; and (3) the consumer is not active in the military. As a matter of course, Messerli personnel also determine whether it has other files or accounts for that individual. After the legal assistant's review, an attorney also reviewed Diehm's file. A complaint was then drafted and sent to Messerli's document program, Docusign, for review by Wisconsin licensed attorney James Kachelski.

Messerli explains that Docusign is designed to allow all attorneys licensed in a particular state to review documents waiting for attorney review and signature. In other words, at least at this stage, the files are not assigned to a particular attorney. Messerli contends, and Diehm does not dispute, that this allows for the efficient allocation of attorney time, though Diehm disputes whether Messerli's attorneys, including Kachelski, engage in any "meaningful review" of these documents. (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 14.)

For his part, Kachelski avers that before signing the Diehm complaint, he reviewed and verified the following information: caption; venue; principal balance; no prejudgment interest request; account number; original creditor name; consumer was living and had not filed bankruptcy; consumer was not in the military; statute of limitations; and Messerli's

internal file, including notes of phone calls and letters. (Kachelski Decl. (dkt. #18) ¶ 5.)[3] Kachelski also avers that he reviewed the bill of sale on the account, terms of the account, and account statements. (*Id.*) Plaintiff challenges Kachelski's statements on the basis that: (1) the documents contain an error about the last pay date as described above and, therefore, any statute of limitations' review would have been incorrect; (2) there are no documents showing a "bankruptcy 'scrub' or report on the same"; and (3) the records reflect Kachelski spent less than a minute reviewing the complaint and any other documentation.[4] (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 15.) The Cogent system reflects that Kachelski logged into the system at 8:22 a.m. on October 10, 2017, signed the state court complaint, and logged out also at 8:22 a.m.

In signing the complaint on October 10, 2017, Kachelski verified that it was not being presented for any improper purpose, the claims were warranted by existing law, and the allegations had factual support. Had Kachelski found an error, he would have rejected it and sent it back to a legal assistant to address the identified errors.

The complaint itself identifies "LNVN Funding LLC as successor in interest to

---

[3] In her own findings of facts, plaintiff represents that "Kachelski could not, at his deposition, say what documentation he viewed before approving the state court complaint." (Pl.'s PFOFs (dkt. #27) ¶ 7.) However, the cited deposition testimony does not support this finding. Kachelski testified, consistent with his declaration, that he reviewed a number of documents. (Kachelski Dep. (dkt. #30) 8.) He then testified, "I can't say, but there's *other* documentation I may have looked at," specifically referencing a credit bureau report. (*Id.* at 9 (emphasis added).)

[4] Plaintiff also takes issue with any statement that Kachelski reviewed the file for attorney fees and allegations of fraud. (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 15.) While defendant mentioned these as areas of review in its proposed findings of fact, Kachelski's declaration does not state that he conducted either of these reviews. Instead, defendant points to the declaration of another Messerli attorney, Derrick N. Weber, in which he lists the areas of review pursuant to Messerli's policy. (Def.'s PFOFs (dkt. #15) ¶ 15 (citing Weber Decl. (dkt. #21) ¶ 37).)

5

Credit One Bank, N.A.," as the plaintiff and Katie Diehm as the defendant. (Kachelski Decl., Ex. 2 (dkt. #18-2) 2.) The complaint also checks off the option "Claim for money ($10,000 or less)" and identifies the demand as $626.09. (*Id.* at 2-3.)

The *full* text of the complaint's allegations state:

> Plaintiff, through counsel, seeks to enforce a cause of action arising from a consumer credit transaction.
>
> As of March 16, 2017, Defendant(s) owe(s) Plaintiff a sum of $626.09 for transactions made on Defendant('s') charge account bearing account number XXXXXXXXXXXX7617 which was/were issued by Credit One Bank, N.A. to Defendant(s).
>
> LVNV Funding LLC purchased this account and is successor in interest to Credit One Bank, N.A.
>
> Defendant(s) is/are in default for failing to make the required payments on the charge account as they came due on two or more occasions within a twelve month period. Pursuant to Wisconsin Statute section 425.109(1)(h), Plaintiff will submit accurate copies of the writings evidencing the Defendant's obligation to the court and the Defendant(s) upon receipt of the Defendant's written request thereof on or before the return date or the date on which the Defendant's answer is due.
>
> WHEREFORE, Plaintiff demands judgment against Defendant(s) for the sum of $626.09, and Plaintiffs costs and disbursements pursuant to Wisconsin Statute §814.04.

(*Id.* at 4.) This complaint was filed on October 17, 2017, in Columbia County Circuit Court, one week after Attorney Kachelski's verification.

### C. Messerli's Workload Generally

At all times relevant to this suit, there were five Messerli attorneys licensed to practice law in Wisconsin. Each of these attorneys shared responsibility for managing the

6

Wisconsin files. Specifically, these attorneys shared in the signing of complaints and garnishments and in attending hearings.

Plaintiff does not dispute that five Messerli attorneys practiced in Wisconsin in October 2017, although she points out that three of the attorneys worked out of the Minneapolis office. Of those three, she also points out that *two* had relatively limited involvement on Wisconsin cases during that time. First, attorney Brian Chou filed only 13 cases in Wisconsin between September 10 and October 10, 2017, was also licensed to practice in Minnesota, Iowa, Nebraska, South Dakota, North Dakota and two tribal courts, and managed Messerli's practices in six states, including Wisconsin.[5] Second, attorney Williams Hicks filed only one complaint in Wisconsin in 2017.

In contrast, the last of the three Wisconsin-licensed attorneys working out of the Minneapolis office, Attorney Jillian Walker, filed 270 cases in Wisconsin between September 10 and October 10, 2017, while also filing 16 cases during this same period of time in Nebraska and South Dakota. At that same time, Attorney Gina Ziegelbauer worked for Messerli in Wisconsin, and she filed 440 cases between September 10 and October 10, 2017, in that state. As a result, plaintiff contends that only two other attorneys besides Kachelski were significantly involved in reviewing the bulk of Wisconsin cases in October 2017, and given those attorneys' respective workloads, the other two attorneys did not have had time to cover Kachelski's cases. Finally, there is no dispute

---

[5] For Attorney Chou and other Messerli attorneys, including Attorney Kachelski, plaintiff also relies on hearing records from September and October 201<u>8</u> (which plaintiff misidentified as 2019) to argue that Messerli's attorneys had hundreds of hearings each month. (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 20.)

7

that Kachelski was the only attorney who worked on the lawsuit against Diehm.

In addition to the five Wisconsin-licensed attorneys, Messerli represents that it: employs a team of legal assistants and paralegals who are able to manage hearing results for the Wisconsin files; hires numerous "appearance counsel" to appear at hearings; and in some counties, need not appear until a defendant contests the claim. Even when an appearance at a hearing is required, Messerli further represents that some counties allow appearances via telephone.

### D. Kachelski's Workload

On October 10, 2017, the date Kachelski signed the complaint against Diehm, his calendar shows that he had no in person or telephonic appearances that day. Plaintiff does not dispute that this is what his calendar shows, but points to Kachelski's testimony at his deposition that typically someone else manages his schedule, and he was unable to say whether anything had been taken off of his calendar between October 2017 and the date of his deposition. From this, plaintiff contends that it is reasonable to infer that he "may well have had numerous hearings or other matters that day, which have since been deleted by the person who maintains the calendar." (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 23.)

However, Kachelski avers that he had "a significant amount of time available to me to meaningfully involve myself in the review of Plaintiff's file and complaint prior to signing the complaint." (Kachelski Decl. (dkt. #21) ¶ 15.) Plaintiff disputes this characterization based on online court records showing 261 new complaints signed by Kachelski filed

8

between October 10, 2017, and October 17, 2017.[6]

### E. Diehm's Alleged Injury

When Diehm received notice of the lawsuit, she thought that her wages were already being garnished. Diehm did not contest the lawsuit, having "assumed that the debt was correct because it was from a lawsuit." (Diehm Dep. (dkt. #24) 97.) Diehm also testified that she assumed the claim was "legit," because she "thought you guys [Messerli attorneys] had looked over it, everything, looked at my file and that was what was going on." (*Id.* at 154.) Diehm made this assessment based on her experience working with an attorney on a custody matter who conducted an investigation of her case and obtained documentation before going to court. (*Id.* at 157.) Diehm further testified that if she knew Kachelski had not investigated her case, she would not have found the state court complaint credible.

Messerli represents that Diehm's "medical records show that [she] did not experience any change in her level of anxiety in response to the October 17, 2017, state court lawsuit in Columbia County." (Def.'s PFOFs (dkt. #15) ¶ 25.) As support, defendant directs the court to Diehm's 65-page medical records, without any specific citations. In response, plaintiff directs the court to her November 2017 medical records, which reveal that Diehm suffered from depression and insomnia and was started on

---

[6] Somewhat inexplicably, plaintiff maintains that it is reasonable to infer that Kachelski signed all 261 complaints on the same day, "since Kachelski signed the Diehm complaint on October 10, 2017 and it was not filed until October 17, 2017." (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 24.) Plaintiff also points out that from September 10, 2017, to October 10, 2017, Kachelski approved for filing 636 new cases in Wisconsin. Regardless, there is no dispute that Wisconsin-licensed Messerli lawyers filed on average 63 new complaints per workday between September 10, 2017, and October 10, 2017.

Trazadone. (Pl.'s Resp. to Def.'s PFOFs (dkt. #28) ¶ 25 (citing Kachelski Dep., Ex. 3 (dkt. #19) 5-8).) At the same time, Diehm acknowledged at her deposition that she had no more anxiety with the filing of the October 2017 lawsuit than she did in response to previous collection lawsuits brought against her.

Still, Diehm testified at her deposition that her anxiety increased, especially at work, because of concern that her wages would be garnished, and that her work suffered as a result. Diehm also felt anxiety because the clerk who signed the summons is one of her hair styling clients. In addition, Diehm testified that she began suffering insomnia around the time of the filing of the lawsuit against her.

OPINION

Defendant seeks summary judgment on the basis that: (1) the undisputed facts do not allow a reasonable jury to find a lack of meaningful involvement; (2) any FDCPA violations were not material; and (3) Diehm failed to provide evidence demonstrating that she was damaged by the alleged lack of meaningful involvement. As it must, the court starts with the third basis, since a failure by plaintiff to present evidence supporting a finding that she suffered a real injury traceable to defendant's alleged lack of meaningful involvement may undermine her standing to sue and, therefore, this court's authority to consider the merits of her claim, then it will turn back to the proof of a lack of meaningful involvement and materiality.

I. **Standing**

To establish standing to sue under Article III of the United States Constitution, a plaintiff "must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision." *Casillas v. Madison Ave. Assocs. Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court held that a "bare procedural violation" was not sufficient to satisfy Article III standing. As the Court explained: "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. The Court further explained that "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist," although the Court also recognized that the injury could be to certain intangible rights. *Id.* As the Seventh Circuit has explained more recently, a plaintiff "must show that the violation harmed or 'presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute.'" *Lavalle v. Med-1 Solutions, LLC*, 932 F.3d 1049, 1053 (7th Cir. 2019) (quoting *Groshek v. Time Warner Cable, Inc.*, 866 F.3d 884, 887 (7th Cir. 2017)).

In contrast to other, post-*Spokeo* FDCPA claims allowed to proceed based on a lack of meaningful involvement by an attorney, the plaintiff here has failed to allege or prove that any errors in the filings would have been addressed had the attorney been more meaningfully involved in reviewing the complaint. For example, in *LoMastro v. Baxter Credit*

11

*Union*, No. 17-cv-962-wmc, 2018 WL 5885536, at *2 (W.D. Wis. Nov. 9, 2018), the court found that the plaintiff had standing to pursue her FDCPA claims where the defendant allegedly "filed a lawsuit on [the creditor's] behalf without giving plaintiff the required notice of her right to cure a defect, as well as misrepresented that an attorney was meaningfully involved in the process." *Id.* at *2. On the lack of meaningful involvement claim, the court explained that "[d]rawing all reasonable inferences in plaintiff's favor, the record would appear to permit [a finding] that this mistake would *not* have occurred had an attorney reviewed [the creditor's] complaint before filing." *Id.*; *see also Satran v. LVNV Funding, LLC*, No. 17-cv-896-jdp, 2018 WL 2464486, at *2 (W.D. Wis. June 1, 2018) ("Drawing all reasonable inferences from the factual allegations in his favor, Messerli filed a lawsuit on LVNV's behalf without first giving him notice of his right to cure default as required by the WCA, and Messerli wouldn't have made that mistake if an attorney had actually reviewed LNVN's claim before filing a complaint."); *Boerner v. LVNV Funding LLC*, 236 F. Supp. 3d 665, 675 (E.D. Wis. 2018) (similarly finding standing to bring meaningful involvement claim where plaintiff also asserted a right-to-cure defect claim).

Here, the lack of meaningful involvement claim stands alone with no alleged underlying, material defect in the collection of the debt itself. Indeed, plaintiff fails to allege in her complaint, or come forward with evidence in opposition to defendant's motion for summary judgment, supporting a finding that she was injured in any way *because of* the alleged lack of attorney involvement in her collections action. Unlike the plaintiffs in *LoMastro*, *Satran*, and *Boerner* in particular, Diehm does not claim that if an attorney had been meaningfully involved in the filing of the state court complaint, he or she would have

determined that the complaint was procedurally defective because defendant failed to provide a notice of right to cure, failed to correct errors in the complaint itself, or for some other reason.

In fact, there is *no* allegation or evidence that the complaint was filed in error or contained errors. At most, as described above in the fact section, plaintiff refers to an incorrect last date paid in the *underlying documents* from the creditor and to terms in a 2017 credit agreement, rather than the terms of a 2016 agreement that may actually have governed her obligations. Neither of these purported errors, however, were material to the filing of the complaint or otherwise created a material defect in the collection action.

Nevertheless, plaintiff both alleges *and* submits a declaration averring at summary judgment that she did not investigate the complaint or otherwise question its accuracy because she assumed the attorney filing the complaint had done this work. She stops short, however, of stating that she suffered an injury because of her failure to investigate. As importantly, even with the benefit of extensive discovery afforded by the filing of this federal lawsuit, plaintiff has been unable to direct the court to *any* defect in the complaint or in the accuracy of the alleged facts that would have made a material difference in the outcome of the underlying collection action. In particular, she neither claims that if a lawyer *had* meaningfully reviewed the complaint, he or she would have discovered the lack of a right to cure letter, that the amount claimed was in error, or that the collections action was time-barred. If those were the facts, the court would easily find a real injury traceable to the alleged violation.

Plaintiff further avers that the collections action increased her anxiety and caused

13

insomnia. Even fully crediting plaintiff's claims, however, this alleged injury is not *traceable* to the alleged FDCPA violation; instead, it is simply tied to the filing of a valid lawsuit. The plain language of the FDCPA provision at stake, as well as Seventh Circuit caselaw considering lack of meaningful involvement of an attorney claim, contemplate communications that could be sent by a non-attorney, but instead are sent by an attorney, perhaps in an effort to invoke action on the part of the debtor. *See* 15 U.S.C. § 1692e(3) (defining "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" as a violation of the FDCPA); *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' know the price of poker has just gone up."). In contrast, plaintiff's claim here is based on Attorney Kachelski's signing of the complaint and, of course, a lawyer has to sign a complaint, unlike a dunning letter, which could be signed by a non-attorney. *See Avila*, 84 F.2d at 229. As such, plaintiff's claimed injury is arguably traceable to the filing of the lawsuit itself, instead of the claimed lack of meaningful involvement.

Of course, plaintiff claims that she erroneously assumed from the signature of a lawyer that he had engaged in a meaningful review of the basis for the complaint and that induced her to take no action to dispute the claim. The United States District Court for the District of New Jersey held in *Bock v. Pressler & Pressler*, 254 F. Supp. 3d 724 (D.N.J. 2017), that a similar stand-alone claim of a lack of meaningful involvement by an attorney was enough to find plaintiff had Article III standing under the FDCPA. In so holding, however, the court relied on the fact that the violation at issue implicated a "substantive right," and, therefore, the court found the plaintiff need not prove any "additional harm."

14

*Id.* at 735-74.

As a general matter, the Seventh Circuit has rejected any such distinction between a procedural and substantive right, at least with respect to the latter relieving the plaintiff in an FDCPA action from showing injury-in-fact. As the court explained in *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), "whether the right is characterized as 'substantive' or 'procedural,' its violation must be accompanied by an injury-in-fact. A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*." *Id.* at 727 n.2; *see also Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017) ("But a failure to comply with a statutory requirement to destroy information is substantive, yet need not (in this case, so far as appears, did not) cause a concrete injury."); *Satran*, 2018 WL 2464486, at *2 (refusing to consider theory based on meaningful involvement provision granting a substantive right).

Whether that same requirement applies to the signature of a lawyer on a complaint who is misrepresenting his meaningful review of its allegations, or for that matter to the signature of a non-lawyer who misrepresents himself to be a licensed attorney, has not been addressed directly by the Seventh Circuit post-*Spokeo*, even if that may be the implications of its most recent rulings. In particular, the Seventh Circuit emphasized in *Casillas* that a plaintiff must prove an "alleged harm" arising out of a violation of the FCPA that is "real" and not "abstract" after *Spokeo*. 926 F.3d at 333 (quoting *Spokeo*, 136 S. Ct. at 1548). In that case, the court found this proof lacking because plaintiff failed to show that the defendant's notice "neglected to specify that Casillas's notification or request" to dispute a debt "must be *in writing*" changed her behavior in any way. *Id*. at 332 (emphasis in

original). To the contrary, Casillas "did not allege that she tried—or even planned to try—to dispute the debt or verify that [the purported creditor] was actually her creditor." *Id*. Having failed to suggest this missing information "would ever" be something Casillas actually used, the court held "[a]ny risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them," making her claim "nothing more than a 'bare procedural violation.'" *Id*. at 334 (quoting *Spokeo*, 136 S. Ct. at 1549).

In contrast, plaintiff avers that had she known that the verified complaint lacked *any* meaningful review by an attorney, she *would* have disputed the debt or, at least, questioned the standing of the purported creditor. In this way, the present claim is more like that considered by the Seventh Circuit in *Lavallee*. In finding standing in that case, the court explained that the alleged statutory violation was "meaningfully different" from *Casillas* in two ways: (1) "Lavallee never received *any* of the disclosures required by § 1692g(a)" and (2) "significantly, Lavallee was already a defendant in a collection suit brought by [the debt collector] when the statutory disclosure violation occurred." *Lavallee*, 932 F.3d at 1053. The court went on to explain that these errors made it "reasonable to infer that she would have exercised her statutory rights, thereby halting the collection litigation, if [the debt collector] had provided the required disclosures," which the court explained "lends concreteness to [plaintiff's] injury." *Id*. At least arguably telling in *Lavallee* is the fact that the plaintiff was not required to allege *any* underlying, substantive defense existed as to the debts claimed in the collection suit, whether in the amount sought or the bona fides of the claimant. Only a lost opportunity to assert the procedural defect as a

16

basis to dismiss the collection action and require the debt collector to start over with proper notice was enough to move beyond a "bare procedural violation" to a real harm.

Admittedly, the plaintiff here, Diehm, had no right under the FCPA to have her collection case dismissed outright; instead, she could merely have disputed the claim, as she both alleges and now avers she would have. So, the question is whether foregoing that right is a "real" enough harm to satisfy *Spokeo* and allow her to proceed. While the answer is less clear than in *Lavallee*, this court finds an answer of "no" too troubling to adopt without greater guidance from the Seventh Circuit or the Supreme Court. Part of the reason for that is the similarity between a collector's § 1692g(a) notice falsely purporting to be signed by a lawyer and a collection complaint falsely purporting to have been verified by a lawyer. Presumably, after *Lavallee*, the former remains actionable in the face of a standing challenge, just as it has in the past, even though the notice is not otherwise deficient, so long as the plaintiff would have had a basis to dispute the adequacy of the notice and halt any subsequent collection action. *Nielsen v. Dickerson*, 307 F.3d 623, 633 (7th Cir. 2002) (affirming district court's finding as a matter of law "that [lawyer's] lack of involvement in the process by which the letter was sent to class members rendered the letter misleading in violation of section 1692e(3)"). So, why should a falsely verified complaint be any different for standing purposes? For that reason, the court concludes that Diehm has standing to assert her FDCPA claim.

## II. Meaningful Involvement

The FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). In

the context of dunning letters, the Seventh Circuit has explained that if the communication "to the debtor is not the product of the attorney's professional judgment," for example, "if he has not independently determined that the debt is ripe for legal action by reviewing the debtor's file," "then the letter is misleading." *Nielsen*, 307 F.3d at 635 (citing *Avila*, 84 F.3d at 228-29).

As for whether Attorney Kachelski was meaningfully involved in the review of the claim against plaintiff and verification of the complaint, the current record is a mixed bag. There is at least circumstantial evidence that suggest Messerli's attorneys, including Kachelski, are sufficiently overworked to make any meaningful review unlikely. On the other hand, Messerli has offered evidence of its having finetuned the review process to make it as efficient as possible -- especially for repeat, high volume customers like LVNV -- through the use of software to compile data and paralegals to verify facts, while minimizing the time necessary for an attorney to complete a meaningful review of the complaint that satisfies both Rule 11 and the FDCPA. Moreover, Kachelski has now submitted an affidavit stating that he had plenty of time to review the basis for the subject complaint. Finally, even if a jury would accept that the time records accurately reflect Kachelski spent less than one minute on his final review of the formal complaint before signing and verifying its accuracy, that document is so short and pro forma, it is even reasonable to conclude that amount of time was sufficient *provided* he had already spent time reviewing the underlying documents, computer summaries and paralegal inputs.

Since there is no definitive evidence on either side on this question, and enough evidence for a reasonable jury to conclude either way, summary judgment must be denied

18

as to this issue as well. *See Bahena v. Jefferson Cap. Sys., LLC*, 363 F. Supp. 3d 914, 928-29 (W.D. Wis. 2019) (denying summary judgment of lack of meaningful involvement claim based on similar record).

### III. Materiality

Finally, defendant's argument that its violations in this case were not material has already been addressed in the standing section above. In short, a reasonable jury could conclude that had Attorney Kachelski not falsely verified the complaint, plaintiff would have been motivated to at least dispute the substance of the complaint, and if nothing else, perhaps have negotiated a resolution more to plaintiff's liking. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012) (defining "material" as the "ability to influence a consumer's decision" (internal citation and quotation marks omitted).

Admittedly, it is hard to see how plaintiff can prove any actual damages caused by this wrongful conduct, but this does not preclude at least an award of statutory damages. *See Borcherding–Dittloff v. Transworld Sys. Inc.*, 58 F. Supp. 2d 1006, 1011–12 (W.D. Wis. 1999) ("To obtain statutory damages, a plaintiff need prove only that the debt collector violated the statute."). Accordingly, defendant's grounds for entry of summary judgment in its favor fail and its motion will be denied.

ORDER

IT IS ORDERED that defendant Messerli & Kramer, P.A.'s motion for summary judgment (dkt. #14) is DENIED.

Entered this 12th day of December, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge